# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:08-cr-20

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **REMONE LEON ROBINSON,** | ) | |
|           **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on Defendant's Motion for New Trial (Document #61), filed July 28, 2009, and the Government's Response (Document #63), filed September 10, 2009. This matter is now ripe for disposition.

## FACTUAL AND PROCEDURAL HISTORY

On January 9, 2009, Remone Leon Robinson was convicted by a jury of conspiracy to possess with intent to distribute cocaine base. In the same trial, Robinson was acquitted of possession of a firearm in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon. Robinson has not yet been sentenced by this court.

The facts relevant to the present motion concern a traffic stop that ultimately led to Robinson's conviction. At approximately 1:00 a.m. on May 2, 2003, uniformed Hickory Police Officers Whitman and Clark were standing near their marked cars at the Ridgecrest Apartments when they observed a car, driven by Robinson, turn into the apartment complex and then abruptly swerve back into the public road, nearly striking a curb. Believing that Robinson might be intoxicated, the two officers got into their separate cars and followed Robinson. During the pursuit Officer Whitman, who was in the lead car, observed Robinson traveling at speeds of between 55 and

65 mph in a 35 mph zone. While following Robinson, Officer Whitman, ran over a hard object in the road. Shortly thereafter, Robinson's car slowed down and Officer Whitman initiated a traffic stop. Robinson then turned into a parking lot and halted his vehicle.

When Officer Whitman approached Robinson's car, Robinson admitted that he did not have a driver's license, whereupon Officer Whitman asked Robinson to exit his vehicle and conducted a pat down search that did not reveal any weapons. During the course of their initial conversation, Officer Whitman noticed that Robinson was sweating profusely. Officer Whitman also had some knowledge of Robinson's criminal record at the time of the stop. After finishing the pat down search, Officer Whitman placed Robinson under arrest for driving without a license, handcuffed Robinson, and placed him in the back of the patrol car. Officer Whitman then radioed another police officer, Officer Duncan, with a specific request to search for a firearm in the place where Officer Whitman had run over the hard object with his car.

After Robinson was secured in the back of the squad car, Officers Whitman and Clark conducted a search incident to arrest of Robinson's vehicle. Their search of the car's interior produced nothing of substance. Although the officers noticed a digital scale on the front passenger seat, the scale was not seized at this time. Despite their failure to discover any contraband, the officers still suspected that the vehicle contained illegal drugs. To aid in discovering any controlled substances, Officer Whitman requested the assistance of a narcotics detection dog.

When the narcotics dog arrived on the scene, the dog alerted after sniffing the exterior of the driver's side door. The officers opened the car door, and the canine alerted to the side of the driver's seat. The officers then searched the area between the seat cushion and the surrounding chrome and plastic trim and found a plastic bag containing 22.6 grams of cocaine base. The officers seized this

2

cocaine base along with the digital scale that had remained on the front passenger seat. Although the exact timing is unclear, at some point before leaving the scene Officer Whitman became aware that a gun had been recovered on the road where he had directed Officer Duncan to search. Officer Whitman was initially informed of this fact by radio. Thereafter, Officer Duncan arrived at the location of the traffic stop and showed the gun to the other officers who were present.

Prior to the trial resulting in Robinson's conviction,[1] Robinson filed a motion to suppress the evidence obtained by the officers during their search of his vehicle. At the time, defense counsel notified the court that the Supreme Court had heard arguments in Arizona v. Gant, 129 S. Ct. 1710 (2009), and that the decision in that case might alter the permissible scope of a search incident to arrest. Based on then-controlling precedent delineating the limits of a search incident to arrest, Robinson's motion was denied. In the motion now before the court, Robinson contends that this court's earlier decision not to suppress the evidence was erroneous in light of the rule subsequently articulated by the Supreme Court in Gant. On this basis alone, Robinson argues that he is entitled to a new trial.

## DISCUSSION

**A. Timeliness of Motion**

Although a motion for a new trial made on any basis other than the discovery of new evidence must generally be filed within seven days of the verdict, FED. R. CRIM. P. 33(b)(2), a district court may extend the time for filing such motions pursuant to FED. R. CRIM P. 45(b). In addition, where the government does not raise an applicable time bar and proceeds to address a defendant's

---

[1]This was the second time that Robinson's case was brought to trial. The first time, the case ended in a mistrial because of a hung jury. Robinson did not move to suppress any evidence prior to his earlier trial.

3

motion on the merits, any defense of untimeliness is forfeited. Eberhart v. United States, 546 U.S. 12, 19 (2005) (holding that government had waived untimeliness defense to a motion for new trial filed six months after conviction under circumstances similar to this case). Because both parties in the present case argue the instant motion on its legal merits, this court will test the motion on the same basis.

**B. Applicability of the Decision in Arizona v. Gant**

As an initial matter, this court must determine whether the Supreme Court decision in Arizona v. Gant, 129 S. Ct. 1710 (2009), decided after Robinson's conviction, is applicable to this motion. Both the Government and Robinson proceed upon the unquestioned and implicit assumption that the ruling in Gant provides the correct standard for analyzing the reasonableness of the search leading to Robinson's arrest and supporting his conviction.

A "new rule for the conduct of criminal prosecutions" is only applied retroactively to those cases "pending on direct review or not yet final" when the opinion is issued. Griffith v. Kentucky, 479 U.S. 314, 328 (1987). "Typically, a federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment." Clay v. United States, 537 U.S. 522, 527 (2003). Since Robinson has not yet been sentenced and judgment has not yet been entered, his conviction has not become final and the rule in Gant applies to his case.

**C. Application of Gant's Holding to the Facts of This Case**

In Gant, the Supreme Court held that a police search of an automobile incident to the arrest of a recent occupant is unreasonable once the arrestee has been secured, unless it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 129 S. Ct. 1710,

1719.  In that case, Gant was arrested for driving with a revoked license, handcuffed, and placed in the back of a police car.  Shortly afterwards, police searched Gant's car and found cocaine and a gun.  Because Gant was secured at the time of the search and because the police could not expect to find any evidence of driving with a suspended license in Gant's car, the Supreme Court in that case found that the search was constitutionally unreasonable and ordered the evidence suppressed.

The facts of the present case are at first blush very similar to those in <u>Gant</u>.  Like Gant, Robinson was arrested for driving without a license.  Like Gant, Robinson was handcuffed and placed in the back of a squad car.  And like the officers in <u>Gant</u>, the officers in this case only searched Robinson's car after he had been secured, and they could not expect to find any evidence of the crime of arrest in Robinson's vehicle.  Viewed in light of the holding in <u>Gant</u>, this first search was not constitutionally reasonable.

However, there is a crucial wrinkle in this case.  The police officers who arrested Robinson did not find any evidence of a crime during their initial search of Robinson's automobile incident to his arrest. Only after a police canine arrived on the scene and alerted to the presence of narcotics did the officers discover cocaine base hidden between the trim surrounding the driver's seat and the seat itself, and only after this finding did the officers seize the digital scale.  At this point, the dog sniff had given the officers sufficient probable cause to support the second search that produced the evidence used against Robinson at trial, and this probable cause was independent of the fact of Robinson's arrest.  Thus, unless the officer's actions in conducting the dog sniff were constitutionally unreasonable, the evidence found in the second search does not need to be suppressed.

The use of a police canine to conduct a dog sniff is not a search and did not infringe

Robinson's rights under the Fourth Amendment. A "dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Illinois v. Caballes, 543 U.S. 405, 410 (2005). Although in that same case the Supreme Court held that a traffic stop prolonged beyond the time necessary to issue a ticket could become unreasonable on that basis, the Court made clear that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner." Id. at 408. Here, Robinson's arrest was lawful and executed in a reasonable manner. Because Robinson had already been placed under arrest at the time of the dog sniff, the sniff subjected Robinson to no additional detention or delay that would make the seizure of his person constitutionally unreasonable.

Furthermore, the dog sniff did not result in an unreasonable seizure of Robinson's automobile. Reasonable suspicion is required to seize property and subject it to a dog sniff. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004) (citation omitted). However, no seizure occurred in this case because the officers did not exercise control over the vehicle in order to conduct the dog sniff. Instead, they merely left the vehicle where Robinson himself had parked it. In addition, the officers did not impede anyone else from taking possession of the automobile. As Justice Souter pointed out in his dissent in Caballes, "if a sniff is not preceded by a seizure subject to Fourth Amendment notice, it escapes Fourth Amendment review entirely" under the holding of that case. 543 U.S. at 411. For this reason, Justice Souter feared that the Court's holding "would render the Fourth Amendment indifferent to suspicionless and indiscriminate sweeps of cars in parking garages and pedestrians on sidewalks." Id.; see also id. at 422 (Ginsburg, J., dissenting)

(stating that the decision "clears the way for suspicionless, dog-accompanied drug sweeps of parked cars along sidewalks and in parking lots").

Although the majority did not specifically expand the scope of the holding in Caballes beyond the circumstances of that case – where a "dog sniff was performed on the exterior of [the defendant's] car while he was lawfully seized for a traffic violation" – those circumstances are remarkably similar to the facts of the present case. Id. at 409. It requires no broadening of the holding in Caballes for this court to find that the dog sniff of the exterior of Robinson's car while he was lawfully detained did not amount to a seizure that would "rise to the level of a constitutionally cognizable infringement." Id.; see also United States v. Farrior, 535 F.3d 210, 220 (4th Cir. 2008) (finding no need for reasonable suspicion where additional time necessary to conduct a dog sniff was minimal and resulted only in a de minimis infringement of defendant's liberty interest). Thus, the dog sniff was constitutionally reasonable under the circumstances of this case.[2] As a result, the second search of Robinson's vehicle was valid, and the fruits of this search do not need to be suppressed.

Robinson makes the additional argument that the digital scale should be suppressed since it was discovered during the initial search, which was conducted in violation of the law as stated in

---

[2]Even if reasonable suspicion was necessary to support the dog sniff, such reasonable suspicion was present in this case. Before the canine was employed, the officers had observed Robinson sweating profusely, the officers knew of Robinson's past criminal record, and the officers either expected to discover or in fact had discovered a firearm which they had cause to believe had been thrown from Robinson's vehicle. In addition, the officers had observed Robinson's flight from the police at a high rate of speed. When taken together, the totality of these factors is more than sufficient to provide reasonable suspicion for the dog sniff. By itself, the discovery of the gun would have given the officers probable cause to search Robinson's vehicle for further evidence of criminal activity, and this fact provides a separate basis for upholding the search on the grounds that discovery of the cocaine base was inevitable. Nix v. Williams, 467 U.S. 431 (1984).

Gant. Although it is true that the officers saw the scale before the canine alert gave probable cause to search, the officers' testimony at trial was clear that the scale was not seized until after the second search discovered the cocaine base and gave the officers probable cause to seize the scale as evidence of a crime. Because the scale was in plain view on the front passenger seat, its discovery was inevitable once the dog alert provided the requisite probable cause, and for this reason the seizure of the scale was not tainted by the initial search.

## CONCLUSION

For the foregoing reasons, the second search of Robinson's car was constitutionally reasonable. Therefore, the evidence found during this search does not need to be suppressed, even after application of the rule from the intervening Supreme Court decision in Arizona v. Gant.

**WHEREFORE**, Robinson's Motion for a New Trial on this basis is **DENIED**.

Signed: October 8, 2009

Richard L. Voorhees
United States District Judge